## Case No. 17,838.

### WILSON v. STODDARD.

[4 N. B. R. 254 (Quarto, 76); [1] 2 Chi. Leg. News, 161.]

District Court, D. Michigan. Nov., 1870.

SALE BY BANKRUPT—VALIDITY—BURDEN OF PROOF.

1. The 35th section of the bankrupt act [of 1867 (14 Stat. 534)], which declares a sale, transfer, etc., not made in the usual and ordinary course of business of the debtor, shall be prima facie evidence of fraud, throws the burden of proof on the purchaser to sustain the validity of his purchase.

2. In such a case the proofs may be taken ore tenus at the hearing.

3. Under the evidence in this case the sale was void.

D. M. Dickinson and George Gray, for plaintiff.

John T. Holmes, for defendant.

WITHEY, District Judge. The petition upon which this hearing is had, was filed by plaintiff, and alleges that about the 10th of August, 1868, the bankrupt made to defendant a sale and transfer of a stock of goods of the value of six thousand dollars, and within six months from the filing of the petition upon which Cummings was declared a bankrupt; that Cummings was then insolvent, that defendant had reasonable cause to believe him insolvent, and to be acting in contemplation of insolvency, and that the transfer was made with a view to impair, hinder, impede, and delay the operation and effect of the provisions of the bankrupt act. Defendant was ordered to show cause; and having denied the allegations of the petition, the case has been heard upon proofs. Defendant's counsel has taken exceptions to the petition and to the proofs being taken ore tenus at the hearing, which are overruled. The facts disclose that Cummings was at the date of the sale insolvent, and that defendant knew of his embarrassed condition. Defendant's counsel conceded this upon the argument. Cummings was a trader at Plainwell, Allegan county, in this district, and had been for several years doing a general country trade. At the time of

---

[1] [Reprinted from 4 N. B. R. 254 (Quarto, 76) by permission.]

the sale of his goods to defendant, there was a mortgage lien thereon of two thousand two hundred dollars to one Sissen, of Plainwell, for money loaned; and also a mortgage to one Brigham, on that part of the stock composed of boots and shoes, on which was unpaid two thousand eight hundred dollars. Cummings owed among other indebtedness in addition to those mortgage debts, one thousand dollars to one Cory, being the amount of two notes of five hundred dollars each, on one of which defendant was liable as indorser. He also owed defendant one thousand one hundred and four dollars not secured, and four hundred dollars to parties not named. Of all this indebtedness defendant admits to have had knowledge when he bought the property of Cummings. His purchase amounted to six thousand one hundred and ninety-seven dollars and twenty-seven cents for goods, and about fifty dollars for accounts bought from Cummings—say six thousand two hundred and forty-seven dollars, total purchase price of goods and accounts. He was to pay by canceling Cummings' debt to defendant of one thousand one hundred and four dollars and fifty-one cents; paying the notes of Cummings to Cory, five hundred dollars and five hundred and four dollars respectively, and by paying Sissen's mortgage of two thousand two hundred dollars. He also gave Cummings his two notes—one for one thousand dollars, the other for eight hundred and eighty-eight dollars. Other creditors have proved debts of more than four thousand dollars against the bankrupt, of which defendant swears he had no knowledge. The sale by Cummings to defendant covered all the bankrupt's property except the boots and shoes, part of his stock mortgaged to one Brigham, and by him taken, at or about the time of sale to defendant, to satisfy two thousand eight hundred dollars.

The provision of section 35 of the bankrupt act, which declares a sale, transfer, etc., not made in the usual and ordinary course of business of the debtor, shall be prima facie evidence of fraud, throws the burden of proof on defendant to sustain the validity of his purchase. Defendant swears that he did not know Cummings owed more than four hundred dollars over the two mortgage debts, the debt due to himself and the other indebtedness, which by the terms of purchase he assumed to pay; and urges that, such being the fact, the prima facie case of fraud is conclusively met, and shows the sale to have been in all respects bona fide, and in no wise a fraud on the provisions of the bankrupt act. Standing alone, this testimony might be sufficient explanation; but when viewed in connection with other testimony, I cannot regard the sale as one entitled to the sanction of the court. When the mortgage to Sissen was made, June 25th, 1868, defendant was placed in the store as agent of the mortgagee, to see that the terms

of the mortgage were complied with in regard to keeping up the stock, and applying sales to its payments. Defendant from that time acted more or less as clerk in Cummings' store, up to the time of his purchase —was familiar with Cummings' business affairs, had access to his books of accounts, and to his invoices of purchases. He knew of the two mortgages on the stock, was a creditor for over one thousand one hundred dollars, indorser on one of Cummings' notes to Cory of five hundred dollars, and knew of the other note of five hundred dollars to Cory. He knew, too, that Cummings was unable to pay this indebtedness, much of it due, and from his relations to Cummings as a creditor, as agent of one mortgage, and as clerk in the store, must be supposed to have been watchful of Cummings' affairs, and have known pretty fully as to his pecuniary standing.

Cummings was upon the point of going away as some sort of an itinerant lecturer, breaking up his business, and without any property left from which other debts could be satisfied. A question arose, while taking the inventory of stock, as to the safety of defendant purchasing, when he was advised by an attorney present, that if Cummings was indebted beyond what it was proposed to arrange, it would not be safe to purchase. Cummings denied that there were any other debts except four hundred dollars. Defendant was thus warned, and prudence required that he should act with reference to the existing state of things. Again, Cummings' indebtedness, according to defendant's testimony, was all to parties residing at Plainwell, where the debtor resided, except the four hundred dollars to parties in Chicago. And yet Cummings had been a trader at Plainwell for many years, purchasing his goods in New York, Chicago, Cleveland, and other places, as defendant well knew. Now, is it reasonable to say or believe that defendant did not know, or, at least, have reasonable cause to believe, that this trader owed debts on his purchases, as it is shown he did, to an amount exceeding four hundred dollars, and when it was known that he was largely indebted at home, and purchased his goods abroad? Defendant, while taking account of stock, consulted the invoices of purchase, and one witness testifies that defendant said to him, after the purchase, he bought the goods to protect himself.

I cannot doubt for a moment but defendant knew of Cummings' insolvency and indebtedness to some extent outside of home debts, and that he purchased the goods to protect his own interests, in utter disregard of the rights of a large number of other creditors. Defendant assumed the payment of no part of Cummings' debts, outside of one note of five hundred dollars to Cory, who was his brother-in-law, except what it was to his interest to pay. Sissen's two

thousand two hundred dollar mortgage was a lien on the goods. Defendant could get no title except subject to this mortgage. He was liable to Cory on one of the five hundred dollar notes held by his brother-in-law; the other he assumed to pay.

I hold the sale void, under the evidence, by the terms of the bankrupt act. The plaintiff is satisfied to take judgment for three thousand five hundred and forty-three dollars, and, although I think he is entitled to recover more, I will take that sum as the amount of defendant's liability in this case, with costs of the proceedings.